Xin Tian, Esq. (State Bar No. 363544)
17802 Sky Park Circle, Suite 205
Irvine, California 92614
TEL: 949-213-5199 | EMAIL: SUNREBORN@GMAIL.COM
ATTORNEY FOR PETITIONER JINGFENG XU

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JINGFENG XU,<br><br>Petitioner,<br><br>v.<br><br>JAMES JANECKA, Warden-Facility Administrator, Adelanto ICE Processing Center; THOMAS P. GILES, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>Respondents. | ) Case No. _______________<br>)<br>) **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br>)<br>) [Related to No. 5:26-cv-01594-CV (PD)]<br>)<br>) **IMMIGRATION DETENTION — IMMEDIATE RELEASE REQUESTED**<br><br>[Ex Parte Application for Temporary Restraining Order Filed Concurrently] |

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

Petitioner Jingfeng Xu has lived in the United States for twelve years and has been in removal proceedings, at liberty, for more than seven. For nine years his family reported in person to U.S. Immigration and Customs Enforcement ("ICE") whenever ICE told them to. For the three months before his arrest, ICE itself supervised him in the community under a GPS ankle monitor, a SmartLINK telephone application, twice-monthly appointments at an ISAP office, monthly appointments at ICE's Los Angeles field office, and home visits every two weeks. ICE's own arrest record confirms that on the morning of November 20, 2025, **he "reported to BI office in Los Angeles as instructed on his reporting requirements." Ex. B at 2.**

He was arrested while standing in line. The day before, an ICE employee had telephoned him, told him to come in, suggested that his ankle monitor might be removed, and told him to bring every passport in the family—including his eleven-year-old son's United States passport. He came, with his wife and both children. **No one asked him a question. No one told him that his liberty was at risk, that he could contest the decision, or that he had a right to be heard. ICE's own record shows that ICE had confirmed, the day before, that his appeal from the removal order was pending.** Ex. B at 2. ICE told him it "could not find" the appeal, handcuffed him, and—in its own words—"processed [him] as a Final Order of Removal." Ex. B at 3–4. **The same officers released his wife, who was subject to the identical order, under the identical supervision, that same afternoon.** Ex. D.

The removal order ICE invoked was stayed within three weeks, vacated within four months, and **on September 23, 2026, rescinded outright by the Immigration Judge,** who found that Petitioner's single missed hearing was the product of "a clear and obvious case of ineffective assistance of counsel," that he "was reporting to immigration as required," and that he "had no reason to miss the hearing." Ex. A at 5. Petitioner has now been detained for more than 310 days. Respondents have never given him notice of why his release was revoked, never offered him an opportunity to be heard before taking his liberty, and never made a new custody decision after the stated basis for the arrest disappeared.

On August 26, 2025, ICE made a custody decision. It did not detain Petitioner; it released him on conditions—GPS monitoring, electronic and in-person reporting—under its Alternatives to Detention program. Ex. B at 1; Ex. C. Respondents have since told this Court that the November 20 arrest was an exercise of authority to "revoke release." Ex. F at 1–2. This Court has held that when the government has left a noncitizen at liberty on conditions and he has complied with them, the Due Process Clause forbids re-detaining him without notice and a hearing, and that the remedy is release to the conditions that existed before. *Dai v. Janecha*, No. 5:26-cv-03966-PD, 2026 WL 2164154 (C.D. Cal. July 24, 2026) (Donahue, M.J.) (Ex. U). Petitioner asks for that remedy. **He does not ask this Court to review any immigration judge's custody determination. He challenges the constitutionality of the manner in which his liberty was taken**—a question that no tribunal has yet addressed.

## II. CUSTODY

1. Petitioner is in the physical custody of Respondents at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, within

the Eastern Division of this District, where he has been detained continuously since November 20, 2025. Xu Decl. ¶ 25.

## III. JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), Article I, § 9, cl. 2 of the Constitution, and 28 U.S.C. § 1331. Petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is the traditional and appropriate vehicle for challenging the lawfulness of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

3. No statute strips this Court of jurisdiction. 8 U.S.C. § 1226(e) bars review only of discretionary judgments; it does not bar constitutional challenges to the process by which a noncitizen is detained. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018); *Singh v. Holder*, 638 F.3d 1196, 1200–02 (9th Cir. 2011). Nor do 8 U.S.C. § 1252(a)(5) or (b)(9), which govern review of removal orders, apply to a challenge to detention. *Jennings*, 138 S. Ct. at 841.

4. Venue is proper in this District because Petitioner is detained here and his immediate custodian, Respondent Janecka, is located here. *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 443 (2004). This action is related to *Xu v. Warden*, No. 5:26-cv-01594-CV (PD), within the meaning of L.R. 83-1.3.1; a Notice of Related Cases is filed concurrently.

## IV. PARTIES

5. Petitioner Jingfeng Xu is a 42-year-old native and citizen of the People's Republic of China, A# 202-194-128. Xu Decl. ¶¶ 1–2.

6. Respondent James Janecka is the Warden and Facility Administrator of the Adelanto ICE Processing Center, where Petitioner is detained, and is Petitioner's immediate custodian. He is sued in his official capacity.

7. Respondent Thomas P. Giles is the Field Office Director of ICE's Los Angeles Field Office, which has custody of Petitioner and made the decision to arrest and detain him. He is sued in his official capacity.

8. Respondent David J. Venturella is the Acting Director of ICE, the agency with custody of Petitioner. He is sued in his official capacity.

9. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security, which is responsible for the administration of the immigration laws and for Petitioner's detention. He is sued in his official capacity.

## V. EXHAUSTION

10. No statute requires exhaustion of administrative remedies before a noncitizen may bring a § 2241 petition challenging his detention; any exhaustion requirement is prudential and may be waived. *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

11. Exhaustion is not required here because Petitioner's claims are constitutional and regulatory challenges to the manner of his arrest that neither an immigration judge nor the Board of Immigration Appeals ("BIA") has authority to decide. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006). An administrative record is unnecessary to resolve them. *Hernandez*, 872 F.3d at 989; *Miri v. Bondi*, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *10–11 (C.D. Cal. Mar. 5, 2026).

12. This Court has already found, as to this Petitioner, that requiring exhaustion would cause irreparable harm to him and to his United States-citizen child and waived any exhaustion requirement. Ex. O (R&R) at 12–14. Nothing has changed except that he has been detained for five more months.

## VI. STATEMENT OF FACTS

### *A. Entry, asylum application, and seven years at liberty in removal proceedings*

13. Petitioner was admitted to the United States on May 2, 2014, at Honolulu, Hawaii, on a B-2 visitor visa, and has lived here continuously since. Xu Decl. ¶ 2; Ex. M; Ex. B at 1–2.

14. In the second half of 2014, less than a year after he arrived, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture with U.S. Citizenship and Immigration Services ("USCIS"). Xu Decl. ¶ 5. Because his application was pending, USCIS granted him employment authorization as an asylum applicant (category C08) beginning June 9, 2015, and renewed it five times; his current card is valid

through February 19, 2029. Xu Decl. ¶ 5; Ex. E. An asylum-based employment authorization could not issue until the application had been pending for 180 days. 8 C.F.R. § 208.7(a)(1) (2015).

15. On February 23, 2018, USCIS referred the application to the Immigration Court, and on February 28, 2018, the Department of Homeland Security ("DHS") issued a Notice to Appear charging a single ground of removability: that Petitioner remained beyond the period authorized by his visa. Ex. M; Ex. B at 2. The Notice to Appear bears Petitioner's home address. Ex. M.

16. From 2018 through August 2025, Petitioner appeared at every hearing in his removal proceedings—approximately one master calendar hearing each year, and on two occasions an individual hearing that the court converted into a master calendar hearing. Xu Decl. ¶ 9; Ex. J (Cade Decl.) ¶¶ 4, 7. He has never been arrested for, charged with, or convicted of any offense anywhere. Xu Decl. ¶ 4; Ex. B at 1.

17. Petitioner has worked as a commercial truck driver for six years without a traffic citation, formed JFX Trucking Inc. in 2020, and has filed business and personal tax returns every year. Xu Decl. ¶ 8. He lives in Rowland Heights, California, with his wife, Tingting Guo; their fourteen-year-old daughter, Q.X.; and their eleven-year-old son, Y.X., who was born in Los Angeles County and is a United States citizen. Xu Decl. ¶ 3; Guo Decl. ¶ 2; Ex. T.

18. Throughout these seven years the government knew exactly who Petitioner was and where he lived. His address and telephone number were printed on the Notice to Appear; he appeared in Immigration Court every year; USCIS mailed each renewed employment authorization card to his home; and, as set out

below, he reported in person to ICE. The government chose not to detain him. Xu Decl. ¶ 7.

### *B. Nine years of in-person reporting to ICE*

19. In October 2016, ICE released Petitioner's daughter on an Order of Release on Recognizance (Form I-220A), which Ms. Guo signed as her mother. Ex. C; Guo Decl. ¶ 4. From November 2016 through October 2025, whenever ICE directed, the entire family—Petitioner, Ms. Guo, and their daughter—reported in person to ICE at 300 North Los Angeles Street, Los Angeles. ICE officers recorded each appearance by hand on the reverse of the form, from November 22, 2016, through October 24, 2025. Ex. C; Guo Decl. ¶ 4; Xu Decl. ¶ 12; Ex. J ¶ 6. The family never missed an appointment. *Id.*

### *C. The in absentia order caused by counsel, and its timely challenge*

20. Petitioner did not appear at a master calendar hearing on August 22, 2025, because his attorney at the time, Charles Cade, told him that counsel would appear for him and that his personal appearance was not required. Xu Decl. ¶ 10; Guo Decl. ¶ 3. Mr. Cade has so sworn: he told Petitioner "that he did not have to appear. I was wrong. [Petitioner] relied on my guidance." Ex. J (Cade Decl.) ¶ 5. The Immigration Judge ordered Petitioner, his wife, and his daughter removed in absentia. Xu Decl. ¶ 10.

21. Petitioner acted at once. On September 3, 2025, he served Mr. Cade with the notice required by *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988); on September 24, 2025, he moved to reopen and rescind the in absentia order; when the Immigration Judge denied the motion on October 16, 2025, he

appealed, and the BIA receipted the appeal on November 14, 2025. Xu Decl. ¶ 11; Ex. J; Ex. G. In early 2026 he filed complaints against Mr. Cade with the State Bar of California and the Minnesota Office of Lawyers Professional Responsibility; on June 5, 2026, the Minnesota Supreme Court transferred Mr. Cade to disability inactive status. Xu Decl. ¶ 11; Ex. K.

22. On December 10, 2025, the BIA stayed Petitioner's removal. Ex. H. On March 18, 2026, the BIA vacated the denial of the motion to reopen because the Immigration Judge had made no findings on the ineffective-assistance claim, and remanded. Ex. I. DHS never responded to the appeal. *Id.* On September 23, 2026, Immigration Judge Nicole Wells granted the motion to reopen. She found that Petitioner's non-appearance was "a clear and obvious case of ineffective assistance of counsel," that he "took steps to pursue his case without delay," that he "was reporting to immigration as required," and that he "had no reason to miss the hearing." Ex. A at 5. **The in absentia removal order against Petitioner is rescinded and his removal proceedings are reopened.** Ex. A at 6.

***D. ICE's decision to supervise rather than detain: August 26 to November 20, 2025***

23. Four days after the in absentia order, on August 26, 2025, ICE required the whole family to report and noted on the daughter's Form I-220A: "ALL FAMILY members need to report." Ex. C. ICE officers told the family that only Petitioner would be fitted with a monitor and sent Ms. Guo and the children home. That afternoon, in a small room at 300 North Los Angeles Street, an officer placed a GPS monitor on Petitioner's ankle, installed the SmartLINK monitoring application on his mobile telephone, and gave him

papers describing the program. Xu Decl. ¶ 13; Guo Decl. ¶ 5. ICE's arrest record identifies the program: **"Program: ATD – Alternatives to Detention." Ex. B at 1.**

24. For the next three months Petitioner lived under continuous supervision. He wore the GPS monitor twenty-four hours a day; the SmartLINK application tracked his telephone; he reported in person to ICE at 300 North Los Angeles Street about once a month and to the ISAP office at 316 West 2nd Street about twice a month; and a case specialist telephoned him or visited his home about every two weeks. The officer notified him of each appointment the day before through SmartLINK. **He attended every appointment, on time, and each time was allowed to go home.** Xu Decl. ¶ 14; Guo Decl. ¶ 6. ICE's handwritten record confirms family reporting on August 26, August 28, September 4, September 25, and October 24, 2025. Ex. C.

25. During those three months no one from ICE told Petitioner that he might be detained, that his release might be revoked, or that he could request a hearing, and no one served him with a notice to surrender for removal. Xu Decl. ¶ 15. Between his last appointment and November 20, nothing about his circumstances changed: he lived at the same address, wore the same monitor, and reported on the same schedule. **The only intervening event was the filing of his appeal on November 14.** Xu Decl. ¶ 16.

### *E. The arrest of November 20, 2025*

26. On the morning of November 19, 2025, a Chinese-speaking ICE employee telephoned Petitioner. The employee told him to report the next day, said that ICE might remove his ankle monitor, and told him to bring the passports of

every member of his family, including his son's United States passport. Ms. Guo was beside him and heard the call. Xu Decl. ¶ 17; Guo Decl. ¶ 7. That same day, according to ICE's own record, **ICE confirmed with the BIA that Petitioner's appeal was pending, "with no stay on file."** Ex. B at 2.

27. On November 20, 2025, Petitioner, his wife, and both children arrived at 300 North Los Angeles Street at about 7:00 a.m. and waited in line on the seventh floor, as they had for every previous appointment. A uniformed officer asked Petitioner his name and took him to an office on the first floor. Xu Decl. ¶ 18; Guo Decl. ¶ 8. ICE's record describes the event in its own words: Petitioner "reported to BI office in Los Angeles as instructed on his reporting requirements"; the "Arrest Method" was "Non-Custodial Arrest"; the arresting unit was the "Los Angeles Alternatives to Detention (ATD) and Non-Detained (ND) A-Team"; the time was 8:27 a.m. Ex. B at 1–2.

28. Through a telephone interpreter, an officer told Petitioner that ICE "could not find an appeal" in his case. Petitioner said that he had appealed. The officer would not listen. The officer then said that ICE should arrest Petitioner's wife as well, but that because she had two children with her, ICE would arrest only him. He was handcuffed. Xu Decl. ¶ 19. **Before he was handcuffed, no one asked him a single question**—about his family, his children, his health, or whether he feared return to China—and no one told him that he had any right to a hearing or to contest the decision to detain him. Xu Decl. ¶ 20. Officers then presented documents in a plastic bag and told him to sign; no interpreter was provided; he did not understand the documents and refused. Xu Decl. ¶ 21. ICE's record nonetheless states that Petitioner has "no known personal or family circumstances precluding law enforcement action," is not the parent of a minor, "claims to have no medical issues," and "does not claim fear of

returning" to China. Ex. B at 2–3. He was asked none of these things. Xu Decl. ¶ 20.

29. At about 10:00 a.m., Petitioner's attorney arrived and showed the officers the BIA's November 14, 2025 filing receipt for the appeal. The officers disregarded it. Xu Decl. ¶ 23; Guo Decl. ¶ 10; Ex. G.

30. ICE then processed Ms. Guo, who was subject to the same in absentia order and the same pending appeal. Officers photographed and fingerprinted her; told her that ICE "should have" arrested her too but for the two children; took her and Petitioner's expired passports without a receipt; examined and photographed their son's United States passport; **issued her an Order of Supervision (Form I-220B) dated November 20, 2025; fitted her with a GPS ankle monitor; and sent her home.** Guo Decl. ¶ 9; Ex. D. Petitioner's own monitor was removed only after he was in custody, and his telephone, with the SmartLINK application on it, was seized and has not been returned. Xu Decl. ¶ 22.

31. ICE served Petitioner with a Form I-205 warrant of removal and, in the words of its own record, **"processed [him] as a Final Order of Removal," to be held "pending his removal to China."** Ex. B at 3–4. He received no written statement of the reasons his release was revoked and no interview at which he could respond. Xu Decl. ¶¶ 19–21. He was taken to a staging facility in Los Angeles and then to Adelanto. Xu Decl. ¶ 25.

### *F. The stated basis for the arrest disappears*

32. Twenty days after the arrest, the BIA stayed Petitioner's removal. Ex. H. Four months after the arrest, the BIA vacated the denial of his motion to reopen. Ex. I. Ten months after the arrest, the Immigration Judge rescinded the removal order that ICE had invoked to seize him. Ex. A. At no point did Respondents make a new custody determination, give Petitioner notice, or afford him an opportunity to be heard on why he should remain detained once the order he was arrested to execute was no longer enforceable. Respondents' filing in the prior case asserts that he is held under 8 U.S.C. § 1226(a) and that ICE "revoke[d] release" under 8 C.F.R. §§ 241.1(l)(1) and 241.4(l)(2). Ex. F at 1–2.

33. Meanwhile, ICE supervised Petitioner's identically situated wife in the community under the same conditions it had imposed on him. She wore a GPS monitor from November 20, 2025, until ICE removed it on January 29, 2026; she reports monthly to the ISAP office, receives monthly home visits, self-reports monthly through SmartLINK, and reported to ICE on December 30, 2025, and March 10, March 31, and June 30, 2026, with her next report set for January 5, 2027. She has never missed an appointment. Guo Decl. ¶ 11; Ex. D; Ex. L. Her and the daughter's removal proceedings continue before the Santa Ana Immigration Court, with a master calendar hearing set for November 9, 2026. Ex. S; Guo Decl. ¶ 12.

### *G. The prior habeas proceeding*

34. On April 3, 2026, Petitioner filed a petition in this Court, No. 5:26-cv-01594-CV (PD), challenging the March 24, 2026 denial of bond by an immigration judge. The petition alleged that the bond denial rested on the mistaken premise that his appeal was pending before the BIA, that it penalized him for his former attorney's error, and that his detention violated *Zadvydas*. Ex. N at 3–9; Ex. O

(R&R) at 8–9. It did not allege the circumstances of his arrest and did not claim that his detention without pre-deprivation notice and a hearing violated due process. Ex. N.

35. On June 18, 2026, the Magistrate Judge issued a Report and Recommendation finding that the immigration judge's flight-risk determination rested on the incorrect belief that the appeal was pending and failed to consider the medical records of Petitioner's United States-citizen son, and recommending a new bond hearing at which the government would bear the burden of proof by clear and convincing evidence—the relief Respondents themselves proposed. Ex. O (R&R) at 14–20. The Court adopted the recommendation and entered judgment on July 13, 2026. Ex. O (Dkts. 29, 30).

36. At the court-ordered hearing on July 20, 2026, a different immigration judge again denied bond, reasoning that Petitioner had a "prior history of violating the immigration laws" and that the relief he sought was "speculative," a conclusion the judge tied to a supposed years-long delay in filing for asylum. Ex. Q (July 20, 2026 Mem.) at 1–3. Petitioner's appeal of that decision is pending before the BIA. Ex. Q. On September 11, 2026, this Court denied Petitioner's motion to enforce the judgment, holding that the judgment "did not require any particular outcome; it only required a hearing," and that Petitioner's challenges to the hearing's reasoning "go[] beyond the scope of a motion to enforce judgment." Ex. P at 8.

37. **Petitioner does not ask this Court to review either bond determination.** This Petition challenges the lawfulness of the manner in which he was taken into custody on November 20, 2025, and of his continued detention without any process addressed to that question.

***H. Current status***

38. Petitioner has been detained for more than 310 days. His removal proceedings are pending in the Adelanto Immigration Court with no hearing scheduled: a master calendar hearing set for August 26, 2026, was cancelled; a hearing set for September 30, 2026, was noticed on September 16 and then cancelled. Ex. R; Xu Decl. ¶ 27; Tian Decl. His new asylum application is signed and ready to be lodged. Xu Decl. ¶ 28.

39. Since his arrest, his family has had no income other than his wife's unemployment benefits; their rent is $1,666 a month. Their daughter was hospitalized in February 2026 after harming herself and is in weekly therapy; their son was referred by his school for counseling and is in weekly therapy. Guo Decl. ¶¶ 13–14. If released, Petitioner will return to his family's home in Rowland Heights and to his work as a truck driver; his driver's license and employment authorization are valid; his passport, expired, is in ICE's possession; and he will comply with any condition of release, including GPS monitoring, SmartLINK, and in-person reporting, and will obey the Immigration Court's decision in his case whatever it is. Xu Decl. ¶¶ 30–31.

## VII. CLAIMS FOR RELIEF

***Count One — Fifth Amendment: Deprivation of Liberty Without Procedural Due Process***

40. Petitioner realleges the foregoing paragraphs.

41. Petitioner had a protected liberty interest in his continued freedom. The government released him into the community on conditions of supervision in lieu of detention, and, independently, deliberately left him at liberty for seven years in pending removal proceedings with full knowledge of his identity and whereabouts. He complied with every condition.

42. Respondents deprived him of that liberty on November 20, 2025, without prior notice, without any opportunity to be heard, without any hearing before a neutral decision-maker, without any change in his circumstances, and without exigency. The Due Process Clause of the Fifth Amendment required pre-deprivation process. Custody hearings held four and eight months later, addressed to different questions and premised on findings since shown to be erroneous, were not a substitute for it. The violation is continuing.

***Count Two — Detention in Violation of Respondents' Own Regulations***

43. Petitioner realleges the foregoing paragraphs.

44. Respondents have represented to this Court that ICE arrested Petitioner by revoking his release under 8 C.F.R. § 241.4(l). Ex. F at 1–2. That regulation permits revocation only for enumerated reasons and requires that, upon revocation, the noncitizen be notified of the reasons and "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.4(l)(3). Petitioner received neither the notice nor the interview. An agency must follow its own regulations, and detention imposed in violation of them is unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268

(1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). This Count is pleaded in the alternative to Count One.

***Count Three — Fifth Amendment: Detention Without a Reasonable Relation to Any Legitimate Purpose***

45. Petitioner realleges the foregoing paragraphs.

46. Civil immigration detention is constitutional only when it bears a reasonable relation to a legitimate governmental purpose. *Zadvydas*, 533 U.S. at 690. Respondents seized Petitioner to execute a removal order. That order was stayed within twenty days, vacated within four months, and has now been rescinded. Respondents do not contend that Petitioner is dangerous; ICE itself supervised him in the community without incident and released his identically situated spouse the day it detained him. His detention for more than 310 days, without any new custody determination, bears no reasonable relation to any legitimate purpose and violates substantive due process.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court:

(a) Assume jurisdiction over this matter;

(b) Declare that Petitioner's arrest and continued detention without pre-deprivation notice and a hearing violate the Due Process Clause of the Fifth Amendment and 8 C.F.R. § 241.4(l);

(c) Grant the writ and order Respondents to release Petitioner within twenty-four hours on the conditions of release in effect before November 20, 2025, including such reporting and electronic-monitoring conditions as ICE administered under its Alternatives to Detention program;

(d) Order Respondents to file, within three days of Petitioner's release, a status report confirming his release;

(e) Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(f) Grant such other relief as the Court deems just and proper.

Dated: September 29, 2026
Respectfully submitted,
*/s/* Xin Tian
Xin Tian, Esq.
Attorney for Petitioner Jingfeng Xu

**VERIFICATION**

I am the attorney for Petitioner Jingfeng Xu and submit this verification on his behalf pursuant to 28 U.S.C. § 2242 because he is detained at the Adelanto ICE Processing Center. I have read the foregoing Petition. The factual allegations are true and correct to the best of my knowledge, information, and belief, and are based on my review of the records described in the accompanying declarations and exhibits and on

Petitioner's own sworn declaration, filed herewith, which he executed on September 25, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 29, 2026, at Irvine, California.

*/s/* Xin Tian
Xin Tian, Esq.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THIS PETITION PRESENTS A CLAIM THAT HAS NEVER BEEN RAISED OR DECIDED

Respondents will point to Petitioner's prior habeas case. That case is a reason to grant this Petition, not to bar it. The prior petition challenged a bond decision; this one challenges an arrest. The Court adjudicated the former and expressly declined to reach anything beyond it: the judgment "did not require any particular outcome; it only required a hearing," and arguments about the adequacy of the resulting hearing "go[] beyond the scope" of that case. Ex. P at 8. **No court has ever considered whether the Constitution permitted Respondents to take Petitioner's liberty on November 20, 2025, without notice or a hearing.**

No statute bars a second § 2241 petition by an immigration detainee. The successive-petition limits of 28 U.S.C. § 2244(a) apply only to a person detained "pursuant to a judgment of a court of the United States"; Petitioner is detained by an executive agency. The equitable abuse-of-the-writ doctrine, which the government must plead

with particularity, bars a claim omitted from an earlier petition only absent cause and prejudice. *McCleskey v. Zant*, 499 U.S. 467, 494–95 (1991); *Sanders v. United States*, 373 U.S. 1, 8, 15–19 (1963). Both are present. The government's own account of the arrest—the Form I-213 recording that Petitioner was enrolled in ICE's Alternatives to Detention program, that he "reported … as instructed," that ICE had confirmed his pending appeal the day before, and that ICE processed him as a final-order detainee—was first produced by DHS on July 19, 2026, six days after judgment in the prior case; DHS filed no evidence at all at the first bond hearing. Ex. B; Tian Decl. The decisions of this District extending pre-deprivation protection to persons in Petitioner's posture were issued after the prior petition was filed. See *Dai*, 2026 WL 2164154 (July 24, 2026); *Sun v. Warden of Adelanto ICE Processing Center*, No. 5:26-cv-03595-MBK, 2026 WL 2058437 (C.D. Cal. July 14, 2026); *Herman v. DHS*, No. 5:26-cv-01995-MBK, 2026 WL 1723960 (C.D. Cal. June 12, 2026); *Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269 (C.D. Cal. Aug. 5, 2026). And the prejudice is ongoing custody. The prior petition, moreover, was an emergency filing directed at a discrete factual error by an immigration judge; the Court framed and decided it as such. Ex. O (R&R) at 8–9.

## II. PETITIONER HAS A PROTECTED LIBERTY INTEREST IN HIS CONTINUED FREEDOM

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," and it protects noncitizens whether their presence here is "lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 690, 693. A person "who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-

incarcerated." *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Conditional liberty carries "an implicit promise that [it] will be revoked only if he fails to live up to the … conditions," and "must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025).

Applying these principles, courts in this District have repeatedly held that a noncitizen released on conditions who has complied with them may not be re-detained without notice and a pre-deprivation hearing, and then only upon a material change in circumstances. *Dai*, 2026 WL 2164154, at *1–2 (Ex. U); *Sun*, 2026 WL 2058437, at *1; *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025) (noncitizen re-arrested at ICE check-in), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026); *M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (same); *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (re-arrested at USCIS appointment); see also *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970–71 (N.D. Cal. 2019); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). The same courts have extended the principle to noncitizens who were never formally released but whom the government deliberately left at liberty while their proceedings were pending: "Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (visa overstayer with pending asylum application and employment authorization, at liberty six years);

*Martinez*, 2026 WL 2262269, at *5; *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564, at *1 (C.D. Cal. Apr. 13, 2026).

Petitioner's liberty interest is established under both lines of authority. First, he was released on conditions in the most literal sense. On August 26, 2025, ICE made a custody decision: it did not detain him but placed him under GPS monitoring, electronic check-ins, and in-person reporting through its Alternatives to Detention program. Ex. B at 1; Ex. C; Xu Decl. ¶¶ 13–14. Respondents have told this Court, in writing, that the November 20 arrest was an exercise of authority to "revoke release." Ex. F at 1–2. **A release that the government itself describes as revoked was a release.** Second, and independently, the government knew Petitioner's identity and address from the day it issued his Notice to Appear in 2018, granted him work authorization six times, received him in Immigration Court every year, and saw him in person at its own field office some fifteen times over nine years. Ex. C; Ex. E; Ex. M; Xu Decl. ¶ 7; Ex. J ¶ 6. It chose not to detain him for seven years. That is the deliberate acquiescence that *Kharitonova*, *Gagik T.*, and *Martinez* hold gives rise to a protected interest.

Respondents' answer in the prior case suggested that a noncitizen has no protected interest in liberty "while [he has a] valid removal order[]," citing *Moran v. U.S. Dep't of Homeland Security*, 2020 WL 6083445 (C.D. Cal. Aug. 21, 2020). Ex. F at 2. The argument fails on the facts and on the law. On the facts, the order was under timely challenge when ICE arrested him, and ICE knew it: its own record shows that it confirmed the pending appeal on November 19. Ex. B at 2. ICE had known of the order for three months and had responded not by detaining him but by supervising him; the order has since been stayed, vacated, and rescinded as the product of his lawyer's admitted error. Exs. A, H, I. On the law, *Morrissey* itself involved a person whose liberty was "lawfully revocable"; that is the point of the case, and it is why

*Hurd*, *Pinchi*, and every decision cited above hold that revocable liberty is still liberty. The question is not whether the government had authority to revoke Petitioner's release; it is whether the Constitution permitted it to do so without process.

## III. RESPONDENTS DEPRIVED PETITIONER OF THAT LIBERTY WITHOUT ANY PROCESS

The Due Process Clause requires, "at a minimum, … notice and an opportunity to be heard" before the government deprives a person of liberty, *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), and the hearing must come "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). What process is due is determined by weighing the private interest, the risk of erroneous deprivation and the value of additional safeguards, and the government's interest, including the burden of the added procedure. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Every factor favors Petitioner.

### *A. The private interest*

Petitioner's interest is the weightiest the Due Process Clause knows: physical liberty, *Zadvydas*, 533 U.S. at 690, held for more than 310 days. Layered on it are twelve years of residence, eleven years of government-authorized employment, a business, a home, a wife, two children including a United States citizen, and a pending application for relief that has now been restored to an active docket. Exs. A, E, T; Xu Decl. ¶¶ 3, 5, 8; Guo Decl. ¶¶ 2, 13. In *Dai*, this Court found a "substantial" private interest on two years of residence and a pending asylum application. Ex. U at 4. Petitioner's interest is substantially greater.

### *B. The risk of erroneous deprivation*

The second *Mathews* factor asks whether the procedures actually used create a serious risk of error and whether additional safeguards would reduce it. Courts assessing this risk in re-detention cases look to the petitioner's compliance with conditions, his criminal history, and whether the government identifies any changed circumstance. *Dai*, Ex. U at 4–5; *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025); *De Vasquez v. Chestnut*, No. 1:25-cv-1999-JDP, 2026 WL 25539, at *4 (E.D. Cal. Jan. 5, 2026). **Here the risk of error was not hypothetical; the record shows that error occurred.**

The process ICE used was none at all. It summoned Petitioner with a telephone call suggesting that his ankle monitor might be removed, took him from a line, and gave him a single reason through a telephone interpreter—that it "could not find" his appeal—although its own record shows that ICE had confirmed the pending appeal the day before. Ex. B at 2; Xu Decl. ¶¶ 17, 19. It asked him nothing about his family, his children, his health, or his fear of return, yet its record contains an answer to each of those questions. Ex. B at 2–3; Xu Decl. ¶ 20. It stated that he was not the parent of a minor; he is the father of a United States-citizen child. Ex. B at 2; Ex. T. It processed him for removal on a final order that it knew was under appeal, that was stayed within three weeks, and that has now been rescinded because the hearing he missed was missed on his lawyer's sworn instruction. Exs. A, H, I. And its own explanation for choosing him rather than his wife—that she "had two children with her"—had nothing to do with danger or flight. Xu Decl. ¶ 19; Guo Decl. ¶ 9. A hearing before a neutral decision-maker at which Petitioner could have said what his declaration now says—that his appeal was on file, that he had complied with every ATD condition, that his children depended on him—would have surfaced every one of these errors before, rather than ten months after, he was jailed. The evidence that

such a hearing would have produced a different result is the government's own conduct: presented with an identically situated person the same afternoon, it chose supervision and a GPS monitor. Ex. D; Guo Decl. ¶ 9.

Respondents identify no change in Petitioner's circumstances that could have justified revocation. He never violated a condition of release; ICE's record says he "reported … as instructed." Ex. B at 2. Nothing in his life changed between his last check-in and November 20 except that his lawyer filed the appeal that ICE, six days later, said it could not find. Xu Decl. ¶ 16; Ex. B at 2. The in absentia order cannot be the changed circumstance: ICE had known of it for three months and had answered it with a monitor, not a cell. Ex. C; Xu Decl. ¶¶ 13–14. The absence of any changed circumstance was decisive in *Dai* and *Abdeltawab*, Ex. U at 5, and it is decisive here.

Respondents will argue that the two custody hearings Petitioner received after his arrest reduce the risk of error. They do not, for four reasons, and Petitioner emphasizes that none of them asks this Court to review the immigration judges' discretionary judgments. First, they came four and eight months after the deprivation. A post-deprivation bond hearing "is not an adequate substitute" for a pre-deprivation hearing, because the harm the pre-deprivation hearing exists to prevent—wrongful confinement—"will have already been suffered." *Herman*, 2026 WL 1723960, at *5; *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Saballos Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026). That is true even when the later hearing is ordered by a federal court: "the fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure" the original violation. *Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026). Second, neither hearing addressed the question presented here; both asked whether Petitioner should be released going forward, not whether ICE

could lawfully seize him as it did. Third, this Court has already found the first hearing constitutionally deficient—its flight-risk finding rested on a mistaken premise and ignored the evidence of the son's condition. Ex. O (R&R) at 14–18. Fourth, the second hearing rested on two premises that subsequent events have removed: that Petitioner's prospects for relief were "speculative" because his removal order stood and his asylum filing was years late, and that his "history of violating the immigration laws" included the August 2025 non-appearance. Ex. Q (July 20, 2026 Mem.) at 1–3. The Immigration Judge has since rescinded the order and found the non-appearance to be his lawyer's fault, Ex. A at 5–6, and the record shows the asylum application was filed within a year of arrival, Ex. E. **A post-deprivation process that reached, twice, conclusions the record has since overtaken is not evidence that the risk of error was low. It is evidence that the risk was realized.**

### *C. The government's interest*

"[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The burden of a pre-deprivation hearing is "at most minimal"; "[i]n immigration court, custody hearings are routine." *Singh v. Andrews*, 803 F. Supp. 3d at 1048; *Dai*, Ex. U at 6. Respondents have never contended that Petitioner is dangerous. The interest ICE actually asserted—executing a final order of removal, Ex. B at 3–4—ceased to exist when the BIA stayed removal on December 10, 2025, and was extinguished when the order was rescinded on September 23, 2026. Exs. A, H. And ICE had no need to speculate about whether conditions short of detention would secure Petitioner's appearance: it had imposed them, and they had worked, for three months. Ex. B at 2; Ex. C. It continues to rely on the same conditions for his wife. Ex. D; Ex. L. On this record, Respondents can

identify no governmental interest—in securing Petitioner's appearance, in enforcing a removal order that no longer exists, or in administrative economy—that was served by dispensing with pre-deprivation process.

The balance is not close. Petitioner has "a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in [his] unnecessary detention, and any government interest in refusing to provide such process is minimal." *Dai*, Ex. U at 6–7. The re-detention violated due process.

## IV. RESPONDENTS VIOLATED THE REGULATION THEY INVOKED

Respondents have represented to this Court that ICE arrested Petitioner in the exercise of its discretion to "revoke release" under 8 C.F.R. § 241.4(l). Ex. F at 1–2. That characterization matches what ICE actually did on November 20, 2025: it served a warrant of removal and "processed [Petitioner] as a Final Order of Removal." Ex. B at 3–4. Section 241.4(l) permits revocation of a post-order release only for enumerated reasons, 8 C.F.R. § 241.4(l)(2), and requires that the noncitizen "be notified of the reasons for revocation" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(3). Petitioner received neither. He was told, through an interpreter, a single reason that his file contradicted; he was handed papers in a language he does not read and asked to sign them; he was never interviewed; and he was transferred to Adelanto. Xu Decl. ¶¶ 19–22; Ex. B at 2–4.

Respondents may now prefer to say that Petitioner is held under 8 U.S.C. § 1226(a) and that § 241.4 was cited in error. Either account leads to the same place. If ICE

revoked a post-order release, as it told this Court and as its processing of Petitioner reflects, then § 241.4(l)(3) governed and was violated; an agency is bound by its own regulations, and a deprivation of liberty accomplished in disregard of them is unlawful. *Accardi*, 347 U.S. at 268; *Morton v. Ruiz*, 415 U.S. at 235. If instead ICE re-arrested a person it had released on conditions under § 1226(a), then no regulation supplied any process at all, and the constitutional analysis in Part III controls. Count Two is pleaded in the alternative; Count One does not depend on it. The prejudice under either account is the same: the interview or hearing that was owed is the only forum in which Petitioner could have shown, in November 2025, what the Immigration Judge found in September 2026—that the removal order rested on his lawyer's error, that he was reporting as required, and that he had no reason to flee. Ex. A at 5.

## V. THE DETENTION NO LONGER SERVES ANY LEGITIMATE PURPOSE

Because Petitioner is entitled to release on Count One, the Court need not reach Count Three, as this Court declined to do in *Dai*. Ex. U at 7. Petitioner notes only that civil detention must bear a "reasonable relation" to its purpose, *Zadvydas*, 533 U.S. at 690, and that the purpose for which ICE seized him—removal on a final order, Ex. B at 3–4—has not existed since December 10, 2025, and cannot exist now that the order is rescinded. Ex. A. Respondents have never articulated another. A detention that has outlived its only stated justification by ten months, with no new custody determination, is arbitrary in the constitutional sense.

## VI. EXHAUSTION IS NOT REQUIRED

For the reasons stated in Part V of the Petition, no exhaustion requirement applies. Petitioner's claims are constitutional and regulatory challenges to the manner of his

arrest that the BIA cannot adjudicate, *Sola*, 720 F.3d at 1135; *Padilla-Padilla*, 463 F.3d at 977; they require no administrative record, *Hernandez*, 872 F.3d at 989; and this Court has already waived exhaustion for this Petitioner because of the irreparable harm his detention inflicts on him and his United States-citizen son. Ex. O (R&R) at 12–14. The pendency of a bond appeal before the BIA is irrelevant: that appeal concerns whether an immigration judge properly denied bond in July 2026, not whether ICE lawfully arrested Petitioner in November 2025.

## VII. THE REMEDY IS RELEASE ON THE CONDITIONS THAT PRECEDED THE ARREST

The remedy for detention imposed without the process the Constitution requires is to "return Petitioner to the status quo and restore his position as it was prior to the constitutional violation." *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026). That is what this Court ordered in *Dai*—release "on her prior conditions of release within 24 hours"—and what courts in this District have ordered in case after case. Ex. U at 8; *Sun*, 2026 WL 2058437, at *1; *Yataco*, 2025 WL 4065463, at *4; *Cruz*, 2025 WL 4051129; *M.V.F.*, 2025 WL 3691419, at *5; *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026); *Jasbin v. Warden*, No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026).

**A bond hearing would not be a remedy here.** Petitioner has had two, one of them ordered by this Court and conducted under the government's clear-and-convincing burden; a third would give him nothing he does not already have and nothing the Constitution required in November 2025. The violation was the seizure of a supervised, compliant man without notice or a hearing; its only cure is to restore what was taken. Nor is there any practical obstacle. The conditions Petitioner asks to be

returned to are conditions ICE designed, imposed, and administered without incident for three months, and administers today for his wife. Ex. B at 1–2; Ex. D; Ex. L. Petitioner has sworn that he will comply with them, and with whatever the Immigration Court ultimately decides. Xu Decl. ¶¶ 30–31.

## VIII. CONCLUSION

For eleven years the government knew where Jingfeng Xu was. For the last three months before his arrest it knew to the meter. It took him from a line at its own office, without asking him a question, to execute an order that its own records show it knew was under appeal and that the Immigration Court has now set aside. **The Court should grant the Petition and order Petitioner released within twenty-four hours on the conditions of release in effect before November 20, 2025.**

Dated: September 29, 2026

Respectfully submitted,

/s/ Xin Tian

Xin Tian, Esq. (Cal. Bar No. 363544)
17802 Sky Park Circle, Suite 205, Irvine, California 92614
Telephone: (949) 213-5199 | Email: sunreborn@gmail.com
Attorney for Petitioner Jingfeng Xu

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Petitioner, certifies that the Memorandum of Points and Authorities contained in this document contains 3,551 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 29, 2026

/s/ Xin Tian

Xin Tian, Esq.