UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINGFENG XU,<br>Petitioner,<br>v.<br>JAMES JANECKA, et al.,<br>Respondents. | Case No. 5:26-cv-05747-PD<br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br>**A# 202-194-128** |

Jingfeng Xu ("Petitioner"), an immigration detainee, filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and an ex parte application for temporary restraining order ("TRO") seeking release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. Nos. 1, 5. The Court converted the application for TRO into a motion for preliminary injunction and issued a briefing schedule. Dkt. No. 10. Respondents filed an answer to the Petition and an opposition to the preliminary injunction. Dkt. No. 13. Petitioner filed a reply. Dkt. No. 14. The Court considered the relevant pleadings and argument of counsel at the hearing on October 8, 2026.

# I. Background

## A. Petitioner's Previous Habeas Action

Petitioner previously filed a Petition for Writ of Habeas Corpus in this District on April 3, 2026: *Jingfeng Xu v. Warden, Adelanto ICE Processing Center, et al.*, No. 5:26-cv-01594-CV-PD. He challenged a March 24, 2026 bond denial decision by an immigration judge ("IJ") on the grounds that the bond hearing violated due process. The undersigned issued a Report and Recommendation ("Report") finding that the IJ misstated the procedural posture of Petitioner's removal proceedings, which in turn affected his analysis of finding a flight risk and failed to consider Petitioner's children's medical records. This Court recommended that Petitioner receive a new bond hearing pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), where the government would bear the burden by clear and convincing evidence. *See* 5:26-cv-01594-CV-PD, Dkt. No. 26. The District Judge accepted the Report and ordered the bond hearing within seven days. That bond hearing occurred on July 20, 2026, and the IJ denied bond based on flight risk. Dkt. No. 1-3 at 128–130. Petitioner appealed both bond decisions to the Board of Immigration Appeals ("BIA").

## B. The Instant Habeas Action

In this action Petitioner challenges, for the first time, his detention on the grounds that it violated procedural due process because he was not provided with a pre-deprivation hearing when he was detained on November 20, 2025.

## C. Petitioner's Immigration History

The Court summarized Petitioner's immigration history in his previous case and incorporates that summary here by reference. *See* 5:26-cv-01594-

CV-PD, Dkt. No. 26. Additional information provided in the instant Petition and declarations from Petitioner and his wife,[1] is set forth below.

On May 2, 2014, Petitioner entered the United States on a B-2 visa at Honolulu, Hawaii. Dkt. No. 1, Petition ¶ 13. That year he filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. U.S. Citizenship and Immigration Services ("USCIS") granted Petitioner employment authorization beginning June 9, 2015, and renewed it five times; his current card is valid through February 19, 2029.

On February 23, 2018, USCIS referred Petitioner's asylum application to the Immigration Court and on February 28, 2018, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Petitioner as removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa without authorization. *Id.* ¶ 15, Dkt. No. 1-3 at 73 (the Notice to Appear).[2] Petitioner, his wife, and daughter, who are noncitizens, are part of the same removal proceedings. Dkt. No. 1-2, Guo Decl. ¶ 3.

From 2018 to August 2025, Petitioner appeared at every hearing in his removal proceedings, which included one master calendar hearing each year and on two occasions, an individual hearing that the court converted into a master calendar hearing. Petition ¶ 16. Petitioner has never been arrested for, charged with, or convicted on any offense anywhere. While living in the United States, Petitioner has worked as a commercial truck driver, has had no traffic citations, and formed his own trucking company in 2020. He has filed business and personal tax returns every year. He lives in Southern

---

[1] Petitioner and his wife's sworn declarations were written in Chinese and translated into English. *See* Dkt. Nos. 1-1, 1-2. The translator provided a notarized Affidavit of Translation of Foreign Document for each declaration.

[2] The Court uses the page numbers inserted into the pleadings by the Court's electronic filing system.

California with his wife, fourteen-year-old daughter, and his eleven-year-old son, who is a U.S. citizen.

In October 2016, Immigration and Customs Enforcement ("ICE") released Petitioner's daughter on an Order of Release on Recognizance (Form I-220A). Thereafter, whenever ICE directed, the entire family (Petitioner, his wife, and daughter) reported in-person to ICE and never missed an appointment. Petition ¶ 19.

On August 22, 2025, Petitioner did not appear at his master calendar hearing based on the instruction of his then-attorney that his personal appearance was not required. *Id.* ¶ 20. Consequently, Petitioner, his wife, and daughter were ordered removed *in absentia*.

Four days later, on August 26, 2025, ICE required the entire family to report to its office. When the family appeared, ICE fitted Petitioner with a GPS monitor on his ankle, installed a SmartLINK monitoring application on his mobile phone, and gave him papers describing the program. *Id.* ¶ 23. Thereafter, Petitioner wore the ankle monitor twenty-four hours a day; the SmartLINK application tracked his phone, and he reported to the ICE office in-person once a month and to the Intensive Supervision Appearance Program ("ISAP") office twice a month. A case specialist telephoned or visited his home about every two weeks. Petitioner attended each appointment and was allowed to go home. *Id.* ¶ 24.

On September 24, 2025, Petitioner moved to reopen his removal proceedings and to rescind the *in absentia* order. The motion was denied on October 16, 2025, and Petitioner filed an appeal to the Board of Immigration Appeals ("BIA") on November 14, 2025.

On the morning of November 19, 2025, a Chinese-speaking ICE employee telephoned Petitioner and instructed him to report the next day because ICE might remove his ankle monitor; the employee also told

Petitioner to bring the passports of every member of his family. According to ICE's internal record attached to the Petition, on that day, the BIA confirmed that Petitioner had a pending appeal of his removal order. *Id.* ¶ 26; Dkt. No. 1-3 at 14 (I-213 Narrative).

However, on November 20, 2025, when Petitioner appeared to the ICE office with his family, he was detained. Through a telephone interpreter, ICE informed Petitioner that it "could not find an appeal" in his case, despite Petitioner's assertions to the contrary. In fact, later that morning, Petitioner's attorney appeared at the ICE office and showed officers the BIA's November 14, 2025 filing receipt of the appeal. The officers disregarded the notice. Petition ¶ 29.[3] ICE's records reflect that Petitioner was served with a "Form I-205 Warrant of Removal/Deportation and processed as a Final Order of Removal. ERO Los Angeles took [Petitioner] into custody, and he will remain in custody pending his removal to China." Dkt. No. 1-3 at 15.

On December 10, 2025, the BIA stayed Petitioner's removal. Dkt. No. 1-3 at 33. On March 18, 2026, the BIA remanded the motion to reopen Petitioner's removal proceedings and to rescind the *in absentia* order to the IJ to prepare a full decision with findings of fact and conclusions of law. Dkt. No. 1-3 at 37–38.

On September 23, 2026, an IJ granted Petitioner's motion to reopen, finding that he "establishe[d] a clear and obvious case of ineffective assistance of counsel." Dkt. No. 1-3 at 10. Consequently, Petitioner's removal order was rescinded.

---

[3] Afterward, ICE processed Petitioner's wife, issued her an Order of Supervision (Form I-220B), fitted her with a GPS ankle monitor, and sent her home with her children. Petition ¶ 30. Her ankle monitor was later removed on January 29, 2026, and replaced with the SmartLINK application on her phone. She is currently checking in with ICE periodically and has not missed a check-in. Dkt. No. 1-2, Guo Decl. ¶ 11.

## II. Discussion

The Petition raises the following claims: (1) Petitioner's detention on November 20, 2025 without a pre-deprivation hearing violated procedural due process; (2) his detention violated 8 C.F.R. § 241.4; and (3) his detention violates the Fifth Amendment because it lacks a reasonable relation to a legitimate purpose.

Respondents argue that the Petition should be denied because the appeals of Petitioner's bond denials are pending at the BIA and he has not exhausted his administrative remedies. Second, they argue this Court cannot reweigh the evidence considered by the IJ at the bond hearing. Third, the fact Petitioner received a bond hearing significantly reduces the risk of erroneous deprivation under *Mathews v. Eldridge*, 424 U.S. 319 (1976) and satisfies procedural due process. Fourth, they argue detention during removal proceedings is authorized under 8 U.S.C. § 1226(a). Dkt. No. 13.

In reply, Petitioner asserts, correctly, that Respondents' arguments regarding the subsequent bond hearings are unavailing because they do not address Petitioner's claim that he was entitled to receive pre-deprivation process before he was re-detained on November 20, 2025. As Petitioner asserts in the reply, he is not asking the Court to review any custody determination. Dkt. No. 14 at 2. Regarding exhaustion, Petitioner argues it is not required because the BIA has "no authority to adjudicate whether ICE's November 20, 2025 seizure violated the Fifth Amendment, and no authority to order the remedy sought." *Id.* at 6. The Court agrees. The BIA would not consider such a claim because it "does not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *see In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.").

**A. Petitioner was detained under 8 U.S.C. § 1226(a)**

When a noncitizen is ordered removed *in absentia*, their only recourse is to file a motion to reopen, which must be filed within 180 days. 8 U.S.C. § 1229a(b)(5)(C)(i). Courts have found that when a noncitizen appeals a denial of a motion to reopen following an *in absentia* removal order, it is not final until the BIA dismisses it. *Li v. Albarran*, No. 1:26-cv-00980-DAD-EFB, 2026 WL 970529, at *4 (E.D. Cal. Apr. 10, 2026); *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) (holding that the IJ's *in absentia* removal order became final once the 180-day deadline for the filing of a motion to reopen with the IJ had passed); *see also Bonilla v. Hermosillo*, No. 2:25-cv-02196, 2025 WL 3237854, at *3 (W.D. Wash. Nov. 19, 2025) (holding that the petitioner's *in absentia* removal order was not final while his appeal of the IJ's denial to reopen removal proceedings was still pending on appeal).

Here, when Petitioner was detained on November 20, 2025, his appeal was pending with the BIA; at the hearing on this matter, Respondents agreed with this assertion. Therefore, Petitioner's *in absentia* order was not final on the date he was detained. Instead, Petitioner was detained under 8 U.S.C. § 1226(a).

Pursuant to 8 U.S.C. § 1226(a), on a warrant authorized by the Attorney General, a noncitizen may be arrested and detained pending a decision on whether the noncitizen is to be removed from the United States. 8 U.S.C. § 1226(a). Subject to exceptions not applicable here, ICE may continue to detain the noncitizen or may release them on a bond with security and conditions, or on conditional parole. 8 U.S.C. § 1226(a)(1), (2). At any time, that bond or parole may be revoked and the noncitizen rearrested under the original warrant and detained. 8 U.S.C. § 1226(b).

When the noncitizen is arrested pursuant to § 1226(a), ICE makes an initial custody determination, including consideration of a bond. 8 C.F.R.

§§ 236.1(c)(8), 236.1(d). ICE may, in its discretion, release the noncitizen provided they demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons and that the noncitizen is likely to appear for any future proceeding. 8 C.F.R. § 236.1(c)(8).

**B. Petitioner's Re-Detention Violated Procedural Due Process**

The re-detention, without notice or a pre-deprivation hearing, of a noncitizen who was released on conditions after entering into the United States and then fully complied with those conditions, can constitute a violation of the right to due process. *See Cruz v. Lyons, et al.,* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1. Private Interest

Petitioner has a substantial private interest in remaining out of custody. He has resided in the United States continuously since 2014, and has lived with his wife, daughter, and U.S. citizen son. He is employed as a truck driver and owns his own trucking business. For nearly twelve years, he appeared to all his immigration proceedings, except for the August 22, 2025 hearing when he was ordered removed *in absentia*; however, an IJ has since determined that he failed to appear due to ineffectual assistance of counsel, and has reopened his removal proceedings.

Four days after his removal order, ICE made a custody determination and fitted Petitioner with a GPS monitor on his ankle, installed a SmartLINK monitoring application on his mobile phone, and gave him papers describing the program. Petition ¶ 23. Petitioner asserts he complied with all the conditions of his release. *Id.* ¶ 24. Though Respondents asserted in their answer that Petitioner was never previously released on an order of supervision and thus had no due process right to a pre-detention hearing, Dkt. No. 13 at 2, at the hearing on this matter, Respondents' counsel retracted that statement and agreed that Petitioner was previously released on the Alternatives to Detention ("ATD") program. Therefore, based on the record, the Court concludes that ICE made a custody determination to release Petitioner under conditions and monitoring via the ATD program. He remained subject to those conditions until he was taken into immigration custody on November 20, 2025.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671,

683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Court therefore concludes that—consistent with decisions from this District and others—the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at *3; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernandez Lopez v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the record supports the risk of erroneous deprivation is high. For the three months before Petitioner was detained by ICE, he had been subject to GPS monitoring, SmartLINK tracking, and monthly in-person and telephone check-ins. Petitioner's release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight

risk." *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner alleges he attended every appointment between August 2025 and November 2025. Respondents provide no evidence that Petitioner violated the conditions of his release and provided no notice that he would be detained in November 2025. In fact, when he was instructed to appear at the ICE check-in on November 19, 2025, an ICE employee told him that his ankle monitor might be removed. Therefore, based on this record, no changed circumstances existed to justify Petitioner's re-detention.

The record suggests that Respondents detained Petitioner because they believed his removal order was final. Petitioner's ICE record reflects that ICE determined he would "remain in custody pending his removal to China." Dkt. No. 1-3 at 15. When ICE officers detained Petitioner, they disregarded his claims that he had a pending appeal to the BIA, even though ICE's own records reflect that the BIA had confirmed the appeal the previous day. Dkt. No. 1-3 at 14 ("On November 19, 2025, Board of Immigration Appeals (BIA) confirmed XU currently has a pending Appeal of IJMTR with no stay on file."). As the Court already determined, his removal order was not final because his appeal to the BIA was pending, and Respondents provide no explanation for their refusal to acknowledge the appeal, even after Petitioner's counsel appeared at the ICE office and presented a copy of the receipt of appeal to the BIA.

Despite this, Respondents argue that the risk of erroneous deprivation is lessened because of the bond hearing Petitioner received after he was detained. This position is unavailing for the following reasons. First, the March 2026 bond hearing took place roughly four months after he was detained and was found to be insufficient. This Court found the IJ erred by relying on a mistaken understanding of Petitioner's procedural posture and

failed to consider Petitioner's children's medical records, after he stated on the record he would do so. Furthermore, the BIA, on September 30, 2026, remanded the appeal of the first bond denial for the IJ to provide a written decision, while noting that Petitioner's motion to reopen had been granted. Dkt. No. 14-1 at 4.

The second bond hearing took place four months later (approximately eight months after Petitioner was detained). At that bond hearing, the IJ denied bond based on flight due to Petitioner's "prior history of violating immigration laws and regulations of this country and [the] speculative nature of the relief he seeks." Dkt. No. 1-3 at 130. The IJ also noted that at the time, Petitioner's motion to reopen was still pending before the Immigration Court, and the BIA, in remanding the matter, had not opined on the merits of the motion. However, since then, Petitioner's motion to reopen was granted based on ineffective assistance of counsel. Therefore, Petitioner is in a materially different posture since his July 2026 bond hearing, as his removal order was rescinded, and he was placed in removal proceedings.

Based on this record, there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary re-detention.

**3. Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a predetention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a

lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]' " *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

### C. The Bond Hearings Did Not Cure the Failure to Provide Pre-Deprivation Process

Respondents contend Petitioner's bond hearing forecloses his due process claim. However, given the issues identified in the first bond hearing, the fact the second bond hearing took place eight months after he was detained, and in light of the fact that Petitioner's motion to reopen was eventually granted, the Court finds that Petitioner's post-deprivation bond hearings did not cure the initial due process violation. Indeed, courts in this district and elsewhere have rejected the argument that a post-deprivation custody hearing cures the failure to provide pre-deprivation process. *See Charan S. v. Warden of the California City Det. Facility*, No. 1:26-cv-03017-TLN-JDP, 2026 WL 1144158, at *7 (E.D. Cal. Apr. 28, 2026) (finding pre-deprivation due process violation despite the fact petitioner received bond hearing nearly two months into detention); s*ee also Mumaev v. Semaia*, No. 5:25-cv-03409-FLA (MAR), 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026)

(finding that bond hearing six months after re-detention did not cure due process violation and ordering release); *Torres Osmel v. Marin*, No. CV 26-1548-E, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026) ("Respondents now argue that bond hearings, occurring many months after Petitioner's arrest and detention, require the denial of the Petition. However, these extremely belated bond hearings did not remedy the federal law violations Petitioner unjustifiably has suffered. Rather, the most appropriate remedy would be "[t]o return to the status quo - the last uncontested status which preceded the pending controversy," *i.e.*, to order the release of Petitioner . . . .").

### D. Other Grounds

Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it declines to address Petitioner's remaining claims. Nothing prevents Petitioner from raising these claims again in the future, should the Government re-detain Petitioner following the procedures set forth above.

## III. Order

For the foregoing reasons, the Petition is GRANTED as to Count One under procedural due process, and the remaining counts are dismissed without prejudice. Accordingly, the motion for preliminary injunction is denied as moot. Dkt. No. 5.

Petitioner Jingfeng Xu (A# 202-194-128) is **ordered released** within 24 hours of this Order under the terms and conditions of Petitioner's existing release, as if Petitioner had not been detained. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) confirming the return to Petitioner of his personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATED: October 9, 2026

Patricia Donahue
United States Magistrate Judge